**FILED**

MAR 2 1 2001

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RONESHA BUTLER                                )
1327 Trinidad Avenue, NE                      )
Washington, DC 20002                          )
                                              )
          Plaintiff                           )
                                              )
          v.                                  )          Civil Action No. _____
                                              )
MARY SCHAPIRO                                 )          JURY DEMANDED
Chairman,                                     )
Securities and Exchange Commission            )
100 F Street, NE                              )
Washington, DC 20549                          )
                                              )
Serve:                                        )          Case: 1:11-cv-00574
                                              )          Assigned To : Howell, Beryl A.
          Mary Schaprio                       )          Assign. Date : 3/21/2011
          Chairman,                           )          Description: Employ. Discrim.
          Securities and Exchange Commission  )
          100 F Street, NE                    )
          Washington, DC 20549                )
                                              )
          Eric H. Holder, Jr.                 )
          Attorney General of the United States )
          United States Department of Justice )
          950 Pennsylvania Avenue, NW         )
          Washington, DC 20530-0001           )
          Attn: Civil Process Clerk           )
                                              )
          Ronald C. Machen, Jr.               )
          United States Attorney              )
                  for the District of Columbia )
          555 4th Street, NW                  )
          Washington, DC 20530                )
                                              )
          Defendant.                          )
                                              )

COMPLAINT FOR DECLARATORY, INJUNCTIVE,
AND MONETARY RELIEF AND JURY DEMAND

## INTRODUCTION

Plaintiff Ronesha Butler ("Plaintiff" or "Ms. Butler") brings this action for injunctive, declaratory, and monetary relief against Mary Schapiro in her official capacity as Chairman for the United States Securities and Exchange Commission ("SEC" or "Agency") for unlawful discrimination on the basis of her race and retaliation for her engaging in protected EEO activity.

## JURISDICTION

1. This action is brought pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq* ("Title VII").

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) as this matter contains federal questions.

3. Plaintiff exhausted all administrative remedies.

## VENUE

4. Venue is proper in this court pursuant to 42 U.S.C. § 2000e(5)(f)(3) because "the unlawful employment practice [that] is alleged to have been committed, … [occurred and] the employment records relevant to such practice are maintained and administered," in the District of Columbia.  Defendant SEC also maintains its principal office, or headquarters, in the District of Columbia.

## PARTIES

**Plaintiff**

5. Plaintiff Ronesha Butler is a citizen of the United States and resides in the District of Columbia.  At all relevant times, Ms. Butler was employed by Defendant in the District of Columbia.

6. Ms. Butler is an employee within the meaning of Title VII.

**Defendant**

7. Defendant is a federal agency of the United States government and maintains its headquarters within the District of Columbia located at 100 F Street, NE Washington, DC 20549.

8. Defendant is an employer within the meaning of the statute.

## FACTUAL BACKGROUND

9. Ms. Butler was initially hired by Defendant into an attorney advisor position in 2003. In July 2004 Ms. Butler was promoted to the position of Senior Counsel for Defendant's Office of Market Supervision (OMS), within the Division Trading and Markets (DTM).

10. Ms. Butler is an African American female.

11. At all times relevant to this complaint, Ms. Butler had an exemplary performance and conduct record.

12. From her hiring in 2003 until 2008, Ms. Butler was supervised by OMS Assistant Director, Nancy J. Burke-Sanow. Ms. Burke-Sanow's race is Caucasian. Ms. Burke-Sanow was responsible for overseeing Ms. Butler's time and attendance and providing her performance appraisals. Although Ms. Burke-Sanow was not exclusively in control of assigning work assignments to Ms. Butler, she did assign some projects to her and coordinated with other Agency managers to assign duties.

13. At the times relevant to this complaint, Ms. Butler's second level supervisors were DTM Associate Directors David Shillman and Elizabeth King. Mr. Shillman and Ms. King are both Caucasian.

## HOSTILE WORK ENVIRONMENT

14. From early in her employment under the supervision of Ms. Burke-Sanow, Ms. Butler was subjected to an ongoing and pervasive hostile work environment by her supervisor because she was African-American. Instances of this include, but are not limited to, the following.

15. Beginning March 1, 2005, Ms. Butler took four months of maternity leave for the birth of her daughter.

16. Prior to taking her maternity leave, Ms. Burke-Sanow required Ms. Butler to fill out four months of daily leave requests as a pre-requisite for leave approval. This instruction by Ms. Burke-Sanow was not a requirement of Agency policy or practice, nor was it in accordance with Agency policy.

17. Ms. Burke-Sanow did not require non-African-American employees who took maternity leave, or any other long-term medical leave of absence, to request leave in this manner.

18. Ms. Burke-Sanow did not ask Ms. Butler to complete and submit a form required by the Agency to request this type of extended leave, even though Ms. Burke-Sanow knew that such form should be completed by Ms. Butler.

19. As a result of Ms. Burke-Sanow's acts and omissions stated in paragraphs 14 and 15 above, Ms. Butler was required to repay the Agency part of her salary.

20. On various occasions, Ms. Burke-Sanow made racist comments about Ms. Butler and her mother. For example, even though Ms. Burke-Sanow was aware that Ms. Butler's mother was a professional registered nurse, Ms. Burke-Sanow indicated that she believed her mother was only qualified to work as an administrative secretary.

21. Ms. Zenese Butler, is Ms. Butler's mother.  From June 2005 through June 2008, Ms. Zenese Butler was the primary caregiver to Ms. Butler's daughter while Ms. Butler was at work.

22. In the early afternoon of May 12, 2006, Ms. Butler's mother suffered cardiac arrest while Ms. Butler was at work.  Given this urgent and serious medical emergency, and potential safety concern regarding the care of her daughter, Ms. Butler approached Ms. Burke-Sanow to request leave.

23. Although Ms. Burke-Sanow initially expressed reluctance to grant Ms. Butler leave to attend to her mother, Ms. Butler was granted leave while her mother was admitted to the hospital and to aid her during her recovery.

24. While Ms. Butler was on leave to care for her mother, Ms. Burke-Sanow led Ms. Butler's co-workers to believe that she was on an extended last-minute vacation.  These acts by Ms. Burke-Sanow caused Ms. Butler humiliation and degraded her in the eyes of her peers.

25. Gail Jackson is an African-American paralegal supervised by Ms. Burke-Sanow.  Ms. Jackson and Ms. Butler were the only two African-American employees supervised by Ms. Burke-Sanow.  Ms. Jackson complained that Ms. Burke-Sanow discriminated against her by subjecting her work product and time and attendance to greater scrutiny than other employees who were not African-American.

26. Ms. Burke-Sanow subjected Ms. Butler's work product to greater scrutiny than the work product of other attorneys who were not African-American.

27. Ms. Burke-Sanow by her comments and conduct repeatedly demonstrated that she thought Ms. Butler was dishonest, lazy, and incompetent.  Ms. Burke-Sanow did not interact with other employees who were not African-American in this manner.

28. From May 2005 through 2006, Ms. Butler worked on a delisting project with Susie Cho. During this time, Ms. Butler also worked on a corporate debt securities options project with Mark McKayle. Ms. Cho and Mr. McKayle were peers of Ms. Butler, and were not part of Agency management.

29. On April 20, 2006, Ms. Burke-Sanow approached Ms. Cho about Ms. Butler's performance and made unwarranted disparaging comments about Ms. Butler. Specifically, Ms. Burke-Sanow questioned Ms. Cho as to whether Ms. Butler was actually performing tasks under the delisting project as Ms. Butler reported.

30. Ms. Cho informed Ms. Butler that Ms. Burke-Sanow approached her and engaged in the conversation referenced in paragraph 29 above, and that as a result of the conversation Ms. Cho reported that Ms. Burke-Sanow's questioning made her feel uncomfortable and that it was apparent that Ms. Burke-Sanow had a conflict with Ms. Butler.

31. Ms. Burke-Sanow did not subject any other employee to similar scrutiny. Nor is there any evidence that she made inquiries about other subordinate non-African American employees to their coworkers.

32. The Agency implemented a telework program allowing employees to work from home. Employees are permitted to telework on recurring schedules, or may even request to work from home the same morning under an *ad hoc* telework scheme.

33. Ms. Butler was on an approved telework schedule for two days per month.

34. Other employees under the supervision of Ms. Burke-Sanow teleworked as much as two days a week.

35. On six occasions between August 2, 2005 and October 20, 2006 Ms. Burke-Sanow questioned Ms. Butler regarding her telework. Although Ms. Butler repeatedly informed

Ms. Burke-Sanow that she had childcare arrangements. Ms. Burke-Sanow frequently questioned Ms. Butler as to whether she was working on her telework days and asserted that Ms. Butler was caring for her daughter when she was supposed to be working.

36. Ms. Burke-Sanow did not make similar inquiries or accusations of other employees who were not African-American regarding the telework or childcare arrangements.

37. On August 14, 2006, Ms. Butler sent a list to Ms. Burke-Sanow of her work to be completed that day. Included in the list was a call to Mark McKayle and Michael Gaw.

38. In an ongoing effort to scrutinize Ms. Butler, Ms. Burke-Sanow called Mr. McKayle and Mr. Gaw to verify whether Ms. Butler was truthful in reporting that she had this call scheduled.

39. Mr. McKayle informed Ms. Butler that Ms. Burke-Sanow called him and engaged in the conversation referenced in paragraph 38 above, and he reported that Ms. Burke-Sanow's inquiries about Ms. Butler were "strange" and made him feel uncomfortable.

40. Ms. Burke-Sanow did not contact co-workers of other subordinate employees to check on whether their telework assignments were being completed.

41. As a result of Ms. Burk-Sanow's scrutiny and repeated questioning of Ms. Butler's telework arrangements, Ms. Butler ceased teleworking to avoid Ms. Burke-Sanow from harassing her regarding telework in the future.

42. In August 2006, Ms. Burke-Sanow called Deborah Balducchi, the Agency's Director, Office of Equal Employment Opportunity,[1] to inquire as to whether Ms. Butler was spending too much time working on the Agency's African American Council.

43. Ms. Burke-Sanow claimed that her speaking with other Agency mangers about Ms. Butler's performance was routine and that she had made such inquiries related to non-

---

[1] Ms. Balducchi no longer holds this position within the Agency.

African American subordinate employees.  However, when asked at deposition in the administrative processing of this case, Ms. Burke-Sanow was unable to identify any single occasion when such discussions took place or any employee that was discussed.

44. Rather than assign Ms. Butler sustentative attorney work that would qualify Ms. Butler for career enhancement, Ms. Burke-Sanow assigned Ms. Butler with non-attorney administrative tasks that were not commensurate with her pay-grade, knowledge, skills, or abilities.

45. Ms. Burke-Sanow maintained a notebook in which she recorded her negative opinions of Ms. Butler and Ms. Butler's work.  However, when Ms. Burke-Sanow learned that Ms. Butler filed a complaint of discrimination, she stopped logging entries she stopped keeping notes on Complainant.

46. Ms. Burke-Sanow did not maintain a notebook regarding any other employees.

## DENIAL OF MERIT PAY RAISE

47. During this timeframe, Ms. Burke-Sanow supervised six attorneys.  Ms. Butler was the only African American attorney under Ms. Burke-Sanow's supervision.

48. During this time, the Agency's pay raise system required Ms. Burke-Sanow to submit a written performance evaluation for each employee to a pay committee.  The pay committee based decisions regarding employee raises, in part, on these written evaluations.  Ms. Burke-Sanow omitted information related to Ms. Butler's excellent performance on her written evaluation.  The omission of this critical information by Ms. Burke-Sanow contributed to Ms. Butler receiving no merit increase for 2006.

49. Ms. Burke-Sanow did not omit accomplishments on the written performance evaluations of other attorneys who were not African-American.

50. The 2006 pay committee consisted of several supervisors and Associate Directors Ms. King and Mr. Shillman.  Although supervisors on the pay committee gave recommendations regarding pay raises, the ultimate decision on any employee's raise was made by Ms. King and Mr. Shillman.

51. Ms. Butler received an overall acceptable rating for the time period at issue.  Despite her acceptable rating, Ms. Butler did not receive a pay increase.  In fact, she is the only attorney under Ms. Burke-Sanow's supervision to receive no pay increase and the only African-American supervised by Ms. Burke-Sanow.  Furthermore, other attorneys who received the same performance rating as Ms. Butler, but who were not African-American, received a merit pay increase in 2006.

52. Pursuant to Agency policy and obligations, Ms. Burke-Sanow was required to meet with Ms. Butler to engage in a verbal discussion of Ms. Butler's performance, to inform Ms. Butler of the pay committee's decision on any merit raise, and to explain to Ms. Butler the reason for the level of raise given or withheld.

53. Ms. Burke-Sanow failed to meet with Ms. Butler for the 2006 rating cycle in accordance with the policies and procedures set forth in paragraph 52 above.

54. Ms. Burke-Sanow timely followed the policies and procedures regarding employee ratings for all other employees who were not African-American.

55. Ms. Butler reported Ms. Burke-Sanow's conduct to her second level supervisor, David Shillman, however Mr. Shillman was dismissive of Ms. Butler's concerns and he failed to take any action to correct Ms. Burke-Sanow's disparate treatment of Ms. Butler.

56. Ms. Butler was not informed of the reasons that Ms. King, Mr. Shillman, Ms. Burke-Sanow or the pay committee had for denying her a pay raise in 2006.

57. Only after Ms. Butler filed a complaint of discrimination did Agency management craft a reason for denying her a pay raise.

58. Subsequent to filing a complaint of discrimination, Ms. Butler met with Ms. King to discuss a project. At the end of this meeting, Ms. King asked Ms. Sherry Moore, a paralegal in attendance, to leave the meeting and then proceeded to speak with Ms. Butler about her performance. Ms. King stated she believed Ms. Butler was always well prepared, that work product was well written, and that her legal research was well-done. Ms. King also stated to Ms. Butler that there was a belief that she was inefficient in her work.

59. During this discussion Ms. Butler told Ms. King that statistical information about her productivity showed that she was performing as efficiently, or better, than many other employees.

60. Within a few days of this meeting with Ms. King, Ms. Burke-Sanow approached Ms. Butler and stated that she too believed Ms. Butler was inefficient.

61. It was only after Ms. Butler filed an EEO complaint and management was informed of her EEO complaint, that management raised concerns about her efficiency.

62. Subsequent to the commencement of litigation in this matter, the Agency continued to craft new and untrue reasons for denying Ms. Butler a pay increase. In the summer of 2008, the Agency then shifted its reasons for denying her a pay raise to be that the "quality and complexity" of Ms. Butler's work was insufficient to merit a raise.

**RETALIATION AGAINST MS. BUTLER**

63. On October 10, 2006, Ms. Butler contacted an Agency EEO Counselor to initiate the administrative informal complaint process regarding claims of discrimination and harassment on the basis of her race.

64. On January 24, 2007, Ms. Butler filed a formal administrative complaint of discrimination on these claims.

65. On September 5, 2007, Ms. Butler filed a request for hearing with the Washington Field Office of the U.S. Equal Employment Opportunity Commission (EEOC).

66. On October 12, 2007, an EEOC administrative judge issued orders to the parties to engage in discovery regarding Ms. Butler's claims of discrimination.

67. During the discovery period beginning October 2007, Ms. Butler noticed a significant decrease in the number of work assignments given to her by Ms. Burke-Sanow.

68. Ms. Butler made repeated written requests of Ms. Burke-Sanow for work assignments and feedback, but Ms. Burke-Sanow failed to provide a response to Ms. Butler's inquiries.

69. In early 2008 direct supervision of Ms. Butler was transferred from Ms. Burke-Sanow to Mr. David Liu. The fact that Ms. Butler alleged Ms. Burke-Sanow harassed her was not a consideration by Agency management in moving Ms. Butler to report to Mr. Liu.

70. In May 2008, Ms. Burke-Sanow and Ms. King gave deposition testimony in connection to Ms. Butler's administrative EEO complaint.

71. Subsequent to depositions taking place in Ms. Butler's administrative EEO complaint, Ms. Burke-Sanow removed Ms. Butler's work duties related to the OTCBB and Pink Sheets Over-the-Counter Derivatives project that Ms. Butler headed since 2006 and excluded her from project meetings and precluded her from e-mails related to the project's status.

72. Ms. Burke-Sanow reassigned these tasks to Heidi Pilpel, a Caucasian employee who, upon information and belief, did not file an EEO complaint.

73. Rather than giving Ms. Butler work assignments befitting her experience and capabilities, Agency management assigned her with proof-reading tasks such as reviewing documents for proper spelling, grammar, and format.

**HARM**

74. As a direct and proximate result of the acts and omissions of Defendants set forth in paragraphs 1 through 73 above, Ms. Butler suffered from a myriad of physical and emotional damages due to the harassment, retaliation, and discriminatory practices of Defendant.

75. As a result of the actions described herein, Ms. Butler suffered emotional harm, including mental anguish, stress, and humiliation.

76. Ms. Butler's reputation has been irreparably harmed.

77. As a direct and proximate result of the acts and omissions of Defendants set forth in paragraphs 1 through 73 above, Ms. Butler suffered pecuniary loss in the form of lost wages and other benefits and out of pocket expenses.

## COUNT 1: HARASSMENT ON THE BASIS OF RACE
## IN VIOLATION OF 42 U.S.C. § 2000e, *et seq.*

78. Ms. Butler incorporates the allegations contained in paragraphs 1 – 77 as if stated herein.

79. Under 42 U.S.C. § 2000e, *et seq.* ("Title VII"), it is an unlawful employment practice for an employer to discriminate against any employee with respect to her terms, conditions, or privileges of employment because of that employee's race.

80. In order to fall within the purview of Title VII's prohibition against harassment on the basis of race, the harassing conduct must be sufficiently severe or pervasive so as to interfere with the individual's work performance or to create an intimidating, hostile, or offensive working environment.

81. The incidents set forth in paragraphs 7 – 75 meet the Title VII threshold of severe or pervasive conduct.

82. Defendant's acts or omissions contained herein violate 42 U.S.C. § 2000e, *et seq.*

83. Defendant's actions described above directly and proximately have caused, and continue to cause, Ms. Butler to suffer lost wages, lost benefits, and lost interest on earnings, investment opportunities, and retirement benefits; mental anguish, anxiety, stress, loss of enjoyment of life, inconvenience, and humiliation; and harm to her professional development.

## COUNT 2: DISCRIMINATORY DENIAL OF PAY RAISE
## ON THE BASIS OF RACE IN VIOLATION OF 42 U.S.C. § 2000e-2

84. Ms. Butler incorporates the allegations contained in paragraphs 1 – 83 as if stated herein.

85. Under Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's race.

86. Ms. Butler was denied a pay raise for the year 2006 due to her race in violation of 42 U.S.C. § 2000e-2.

87. Defendant's actions described above directly and proximately have caused, and continue to cause, Ms. Butler to suffer lost wages, lost benefits, and lost interest on earnings, investment opportunities, and retirement benefits; mental anguish, anxiety, stress, loss of enjoyment of life, inconvenience, and humiliation; and harm to her professional development.

## COUNT 3: RETALIATION
## IN VIOLATION OF 42 U.S.C. §2000e, *et seq.*

88. Ms. Butler incorporates the allegations contained in paragraphs 1 – 87 as if stated herein.

89. Under Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise retaliate against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual engaged in protected EEO activity or otherwise opposed an unlawful employment practice.

90. As a result of her engaging in protected EEO activity and opposing Defendant's discriminatory practices, Ms. Butler was removed from work assignments, denied work commensurate with her skills and work level, and precluded from projects in violation of 42 U.S.C. § 2000e-3.

91. Defendant's actions described above directly and proximately have caused, and continue to cause, Ms. Butler to suffer lost wages, lost benefits, and lost interest on earnings, investment opportunities, and retirement benefits; mental anguish, anxiety, stress, loss of enjoyment of life, inconvenience, and humiliation; and harm to her professional development.


**WHEREFORE,** Ms. Butler prays this Court to:

(1) Grant judgment in her favor against Defendant;

(2) Grant her declaratory and injunctive relief;

(3) Award her back pay, compensate her for lost benefits in an amount to be proven at trial but in no event less than $300,000.00, and otherwise make her whole;

(4) Award her compensatory damages in an amount to be proven at trial but in no event less than $300,000.00;

(5) Award her reimbursement of the attorneys fees and costs she has expended in litigating this matter; and

(6) Grant her such other and further relief as justice may require.

## JURY DEMAND

Ms. Butler hereby demands a trial by jury on all claims so triable.


Respectfully Submitted,                          Date:  **March 18, 2011**


_____                         _____
Gary M. Gilbert, Esq.                            AR M. Wilkenfeld, Esq.
D.C. Bar No. MD 15808                            D.C. Bar No. 461063
The Law Offices of                               The Law Offices of
    Gary M. Gilbert & Associates, P.C.              Gary M. Gilbert & Associates, P.C.
8401 Colesville Road, Suite 300                  8401 Colesville Road, Suite 300
Silver Spring, MD 20910                          Silver Spring, MD 20910
Tel:    (301) 608-0880                           Tel:    (301) 608-0880
Fax:    (301) 608-0881                           Fax:    (301) 608-0881
Email: Gary@GGilbertlaw.com                      Email: AWilkenfeld@GGilbertlaw.com


_____
Kevin L. Owen, Esq.
D.C. Bar No. MD 16693
The Law Offices of
    Gary M. Gilbert & Associates, P.C.
8401 Colesville Road, Suite 300
Silver Spring, MD 20910
Tel:    (301) 608-0880
Fax:    (301) 608-0881
Email: Kowen@GGilbertlaw.com

Attorneys for Plaintiff Ronesha Butler