UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RONESHA BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-cv-00574 (RCL) |
| | ) | |
| MARY SCHAPIRO,[1] | ) | |
| Chairman, | ) | |
| Securities and Exchange Commission, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff Ronesha Butler ("Butler") brings this action against Mary Schapiro, Chairman of the Securities and Exchange Commission ("SEC" or "the defendant"), pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Butler alleges discrimination and a hostile work environment based on race, and she further alleges retaliation for engaging in protected EEO activity. Presently before the Court is the defendant's motion [5] to dismiss, or in the alternative, motion for summary judgment. For the reasons explained below, the Court will DENY the defendant's motion.

**II.   BACKGROUND**

Butler, an African-American female, was hired by the SEC in 2003 as an attorney advisor. Compl. ¶¶ 9-10. In 2004, Butler received a promotion to the position of Senior Counsel in the SEC's Office of Market Supervision ("OMS"), within the Division Trading and Markets.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Schapiro, in her official capacity as Chairman of The Securities and Exchange Commission, is automatically substituted as the named defendant.

*Id.* From her initial hiring in 2003 until 2008, OMS Assistant Director Nancy Burke-Sanow ("Burke-Sanow"), a Caucasian female, supervised Butler. *Id.* ¶ 12.

In March 2005, Butler took four months of maternity leave. *Id.* ¶ 15. Prior to taking this leave, Burke-Sanow required Butler to fill out four months of daily leave requests. *Id.* ¶ 16. Burke-Sanow failed, however, to have Butler submit the required extended leave form. *Id.* ¶ 18. As a result, Butler received more compensation than she was entitled to during this time, and the SEC required her to repay the unearned portion. *Id.* ¶ 19.

In May 2006, Butler's mother suffered cardiac arrest, and Burke-Sanow "reluctantly" granted Butler's leave request to attend to her mother. *Id.* ¶¶ 22-23. While on leave to care for her mother, plaintiff alleges that Burke-Sanow informed other employees that Butler was on an extended last-minute vacation. *Id.* ¶ 24.

From 2005 to 2006, Butler assisted on a delisting project with fellow employee Susie Cho. *Id.* ¶ 28. On April 20, 2006, Burke-Sanow approached Cho and made disparaging comments about Butler. *Id.* ¶ 29. Burke-Sanow also questioned Cho about whether Butler actually performed the tasks under the delisting projects that were reported. *Id.* ¶

During her time at the SEC, Butler teleworked two days each month. *Id.* ¶ 33. On six occasions between August 2005 and October 2006, Burke-Sanow questioned Butler about whether Butler was actually working from home, or instead, caring for her daughter. *Id.* ¶ 35. On August 14, 2006, Butler sent a work report to Burke-Sanow of the tasks she would complete while teleworking from home that day. *Id.* ¶ 37. Burke-Sanow followed up with two employees on the list to verify that Butler performed the tasks on her work report. *Id.* ¶ 38. Butler eventually stopped teleworking. *Id.* ¶ 41.

On May 30, 2006, Associate Directors Elizabeth King and David Shillman met with the Assistant Directors, including Burke-Sanow, to discuss employee performance for the May 2005 to April 2006 time period. Def.'s Mot. at 5. During this meeting, the Assistant Directors gave recommendations to King and Shillman regarding merit pay raises. Compl. ¶ 50. Butler received an overall acceptable rating for the period at issue, but she did not receive a merit pay increase in 2006. *Id.* ¶ 51.

In August 2006, Burke-Sanow called Deborah Balducchi, the SEC's then Director of Equal Employment Opportunity, to inquire into Butler's current time commitment to the SEC's African-American Council. *Id.* ¶ 42.

On October 10, 2006, Butler contacted an EEO Counselor to initiate the formal complaint process for race discrimination and harassment based on race. *Id.* ¶ 63. During the discovery period of Butler's EEOC claims, Butler's work assignments and feedback from Burke-Sanow decreased. *Id.* ¶ 68. Butler was additionally removed from working on the OTCBB and Pink Sheets Over-the-Counter Derivatives projects. *Id.* ¶ 71.

Butler filed the instant action on March 21, 2011 alleging harassment and discrimination on the basis of race, and retaliation. The defendant subsequently filed a motion to dismiss, or in the alternative, motion for summary judgment. This motion is now ripe for determination by the Court.

### III.   ANALYSIS

####    A.      Standard of Review for a Motion to Dismiss

A motion to dismiss is appropriate when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome this hurdle, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in

order to give the defendant fair notice of what the . . . claim is[,] and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  The Court must "accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, the Court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.*  In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see also Atherton*, 567 F.3d at 681.

  B.    **Retaliation Claim**

  The defendant moves to dismiss Butler's retaliation claim on the grounds that she failed to exhaust her administrative remedies.  Def.'s Mot. at 10.  Specifically, the defendant asserts that on January 25, 2010, Butler received a right to file a formal complaint with the EEOC on her retaliation claim, and she failed to do so within the 15-day allotted period. *Id.* at 11.  Butler argues in response that the failure to timely file an administrative complaint should be excused because the delay in filing was unintentional.  Pl.'s Opp'n at 17.  Butler further argues that the facts asserted in her retaliation claim are "like or related" to her properly filed administrative claims of discrimination and harassment, and therefore, she should be allowed to proceed with this claim. *Id.* at 17-18.

  An employee must file an EEOC complaint within 15 days of receiving notice of his or her right to do so. *See* 29 C.F.R. § 1614.106(b). The failure to file a timely complaint within the 15-day period constitutes a failure to exhaust administrative remedies, and is grounds for dismissal of the case by the agency, subject to equitable tolling. *See Wilkins v. Daley*, 49 F.

Supp. 2d 1, 2 (D.D.C. 1999) (citing *Saltz v. Lehman*, 672 F.2d 207, 208-09 (D.C. Cir. 1982)); 29 C.F.R. 1614.604(c) ("the time limits in this part are subject to waiver, estoppel and equitable tolling"). If the employee files a formal administrative complaint and is not satisfied with the agency's resolution of that complaint, he or she may either appeal to the Equal Employment Opportunity Commission or file a civil action in federal court. *See Johnson v. Peterson,* 996 F.2d 397, 399 (D.C. Cir. 1993). Again, there is a specified time period within which the employee must take these steps. *See* 29 C.F.R. § 1614.110.

The Court's power to equitably toll these filing periods may be exercised "only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988); *see also Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998). In order to gain the benefit of equitable tolling, the plaintiff "bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citing *Bayer v. United States Dep't of the Treasury*, 956 F.2d 330, 333 (D.C. Cir. 1992) and *Jarrell v. United States Postal Service*, 753 F.2d 1088, 1091-92 (D.C. Cir. 1985)). In addition, a plaintiff must establish that he or she "acted diligently to preserve [the] claim." *Wilkins v. Daley*, 49 F. Supp. 2d at 2.

Butler does not deny that she failed to timely file an administrative complaint for her Title VII retaliation claim. Instead, she argues that her attorney's paralegal attempted to file this complaint on time, and it was accidentally delivered to a different government office. Pl.'s Opp'n Ex. 22. Upon discovery of this mistake, Butler's attorney promptly filed the complaint with the correct office the next day. *See id.* Ex. 23. The properly filed complaint did not fall within the 15-day period. Upon careful consideration of the filings of the parties, and particularly of the undisputed facts proffered by plaintiff with respect to the unintentional filing

at the wrong agency, the Court finds that the 15-day period is equitably tolled from the time Butler attempted to file her complaint to the EEOC Office on February 4, 2010 until the next reasonable opportunity she had to file his complaint, the day after she discovered the error. *See Baker v. Henderson*, 150 F. Supp. 2d 17, 21-22 (D.D.C. 2001) (time period equitably tolled where plaintiff, in exercising due diligence, acted "swiftly" to file the complaint as soon as she discovered error on the part of the clerk's office). Therefore, the defendant's motion to dismiss the plaintiff's retaliation claim based upon failure to exhaust her administrative remedies is denied.

### C. Hostile Working Environment Claim

To begin, Butler's hostile work environment alleges the following actions demonstrate that she was subjected to discriminatory intimidation, ridicule, and insult: (1) Butler having to fill out daily leave requests for four months of maternity leave; (2) Butler paying back part of her salary because Burke-Sanow failed to provide Butler with the appropriate extended-leave request; (3) Burke-Sanow making various racist comments; (4) Burke-Sanow reluctantly approving Butler's leave request to attend to her mother; (5) Burke-Sanow informing Butler's co-workers that Butler was on an extended last-minute vacation, when instead, Butler was caring for her mother; (6) Burke-Sanow subjecting Butler's work product to greater scrutiny than non-African-American employees; (7) Burke-Sanow making repeated comments and demonstrating that she thought Butler was lazy, dishonest, and incompetent; (8) Burke-Sanow questioning Butler's colleagues as to whether Butler actually completed her work; (9) Burke-Sanow questioning Butler about whether she was not teleworking, and instead, caring for her daughter while at home; (10) Burke-Sanow inquiring as to whether Butler spent too much time working on the SEC's African-American Council; (11) Burke-Sanow assigning Butler with administrative

tasks instead of actual work ; and (12) Burke-Sanow keeping a notebook where she recorded negative opinions of Butler's work.

The defendant moves to dismiss Butler's retaliation claim, arguing that even if everything alleged in Butler's complaint occurred, no reasonable person could consider such conduct meets the standard required to establish a hostile work environment claim. Def.'s Mot. at 14.

While Plaintiff is not required to plead a *prima facie* case of hostile work environment in the Complaint, the alleged facts must be able to support such a claim. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000). To allege a *prima facie* case of hostile work environment, Plaintiff "must demonstrate that: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment occurred because of her race or disability; (4) the harassment affects a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it." *Childs–Pierce v. Utility Workers Union of Am.*, 383 F. Supp. 2d 60, 77 (D.D.C. 2005), *aff'd*, 187 Fed. Appx. 1 (D.C. Cir. 2006).

Not all forms of offensive or discriminatory conduct, however, give rise to a hostile work environment claim. A workplace becomes "hostile" only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). In determining whether a hostile work environment exists, the Supreme Court has directed courts to examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. Boca Raton*, 524 U.S. 775, 787–

88 (1998) (quoting *Harris*, 510 U.S. at 23). "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' " *Id.* at 788 (citations omitted). "Even a few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citing *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir.1996)); *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing a hostile work environment claim in part because "the alleged events are temporally diffuse, spread out over a four-year period suggesting a lack of pervasiveness"); *Childs–Pierce*, 383 F. Supp. 2d at 79 (dismissing a hostile work environment claim that plaintiff "attempt[ed] to cobble together . . . from discrete acts of alleged discrimination against her that are neither severe nor widespread.").

In making its argument for a motion to dismiss, the defendant mistakenly directs the Court to examine a variety of cases where the plaintiff failed to provide enough evidence to support a hostile work environment claim at the summary judgment stage. *See* Def.'s Mot. at 15. However, the defendant clearly requests the Court dismiss Butler's claim under the motion to dismiss standard, stating that "[e]ven assuming that these allegations were true, no reasonable person could consider such conduct, either individually or collectively, to be sufficient[.]" *Id.* at 13. Although each individual act Butler contends likely does not amount to a hostile working environment, the Court must look at the totality of the circumstances in determining actionable harassment. *Faragher*, 524 U.S. at 787-88. Additionally, the Court must grant the plaintiff the benefit of drawing all factual inferences in her favor. *Kowal*, 16 F.3d at 1276. Taken as a whole, the complaint alleges that over a one-year time period, Butler's immediate supervisor repeatedly made racist remarks and unwanted disparaging comments about Butler's work product and general demeanor. Additionally, the scrutiny directed towards Butler's work performance and

honesty did not extend to any non-African-American employees. Assuming these allegations to be true, the Court finds the conduct sufficient to withstand a motion to dismiss.

### D.      Standard of Review for Summary Judgment

Summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A genuine issue exists where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," as opposed to evidence that "is so one-sided that one party must prevail as a matter of law." *Id.* at 248. A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.* at 255. But the nonmoving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

### E.      Discrimination Claim

The sole adverse employment action alleged in Butler's race discrimination claim is the SEC's decision to award her a zero merit step increase for the 2005-2006 year. The defendant moves for summary judgment, arguing that Butler has failed to rebut the defendant's legitimate non-discriminatory reason for not awarding her this increase. Def.'s Mot. at 22. Butler requests the Court deny the defendant's motion pursuant to Rule 56(d). Pl.'s Opp'n at 23. More

specifically, Butler argues that the defendant supports its motion with affidavits obtained from individuals that Butler has yet to depose. *Id.*

In general, summary judgment in Title VII cases should be avoided where discovery has not taken place. *See, e.g., Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (citing *Hackley v. Roudebush*, 520 F.2d 108, 149, 151 (D.C. Cir. 1975)). Parties requesting discovery are generally required to submit motions under Rule 56(d) of the Federal Rules of Civil Procedure. Rule 56(d) provides that a court may deny a motion for summary judgment, order discovery, or "issue any other appropriate order" if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).[2] The affidavit or declaration "cannot be a generalized, speculative request to conduct discovery but must demonstrate that further specified discovery will defeat a summary judgment motion," *Estate of Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 35 (D.D.C. 2010) (quoting *Maduforo v. Urban Serv. Sys. Corp.*, 2009 WL 2378743, at *1 (D.D.C. July 31, 2009)), and "show what facts [the nonmoving party] intend[s] to discover that would create a triable issue and why he could not produce them in opposition to the motion." *Byrd v. EPA,* 174 F.3d 239, 248 n. 8 (D.C. Cir. 1999). Even in the absence of an affidavit, courts may nonetheless postpone summary judgment if additional filings in the case have "served as the functional equivalent of an affidavit[,]" and informed the court that further discovery is needed. *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988). In this regard, "[c]onclusory allegations without any supporting facts are not sufficient to justify additional discovery." *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 502 F. Supp. 2d 103, 106 (D.D.C. 2007).

---

[2] Rule 56(d) was formerly codified as Rule 56(f). The new codification was made "without substantial change." Fed.R.Civ.P. 56(d) 2010 amend. cmt. (2010).

Butler specifically identifies individuals she wishes to depose in order to prove the defendant's asserted reason for not awarding her a merit step increase is pretextual. Therefore, because no discovery has taken place yet in this case, and additionally, because the D.C. Circuit has rejected the notion that the district court can resolve a Title VII case based solely on the administrative record at the summary judgment level, *Hackley v. Roudebush*, 520 F.2d 108, 149 (D.C. Cir. 1975), the Court denies the defendant's motion for summary judgment.

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES the defendant's motion [5] to dismiss, or in the alternative, motion for summary judgment.

A separate Order and Judgment consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 20, 2012.